UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| H.V. and F.J., individually and on behalf of their minor child, A.T.V., <br><br> Plaintiffs, <br><br> v. <br><br> VINELAND CITY BOARD OF EDUCATION, et al., <br><br> Defendants. | 1:21-cv-20592-NLH-AMD <br><br> OPINION |

Appearances:

BRUCE H. ZAMOST
HELMER CONLEY & KASSELMAN
600 BEVERLY RANCOCAS ROAD
WILLINGBORO, N.J. 08046

*On behalf of Plaintiffs*

JEFFREY L. SHANABERGER
HILL WALLACK, LLP
21 ROSZEL ROAD
P.O. BOX 5226
PRINCETON, N.J. 08543

*On behalf of Defendants*

**HILLMAN**, District Judge

Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 5). For the reasons expressed below, Defendants' motion will be granted in part.

I.  **Background**

Defendant Vineland City Board of Education ("BOE") is the entity in charge of the operations of schools in Vineland, New Jersey.  (ECF 1-1 at ¶ 1).  Defendant Mary Gruccio was superintendent of Vineland schools during the relevant period while Defendants Suzette Demarchi and John Provenzano served as principal and head of security, respectively, for Defendant Vineland High School ("VHS").  (Id. at ¶ 4).  Defendants John Doe 1 through 20 are fictious names of individuals who served as security, teachers, or administrators at VHS.  (Id.).  Defendant A.R.[1] was a freshman at VHS and John Doe 21 through 30 were fellow students.  (Id. at ¶¶ 3-4).  Plaintiff A.T.V. was also a freshman student at VHS at the time in question and Plaintiffs H.V. and F.J. are her parents (collectively "Plaintiffs"), all of whom resided in Florida as of the institution of this action.  (Id. at pg. 1, ¶ 3).

The instant action stems from a December 5, 2019 incident in which A.R. was allegedly permitted into VHS during school hours without vetting and thereafter followed A.T.V. up to an unlocked second-floor computer lab and sexually assaulted her.  (Id. at ¶ 9).  At the time immediately preceding and during the assault, a security station was located at VHS's entrance and

---

[1] A.R. is referred to by both his full name and initials in the Amended Complaint.  The Court will refer to him by his initials.

2

cameras and monitors were utilized to track activities within the building. (Id. at ¶ 10).

Plaintiffs filed a six-count Amended Complaint in the Superior Court of New Jersey – Law Division in November 2021,[2] alleging, among other causes of action, violation of Plaintiffs' rights under the United States and New Jersey constitutions, violation of Title IX, 20 U.S.C. §§ 1681 et seq., negligence, and several intentional torts. (Id. at ¶¶ 1-43). Defendants BOE, VHS, Gruccio, Demarchi, and Provenzano (collectively "Vineland Defendants") thereafter filed a notice of removal.[3] (ECF 1). The parties then stipulated to the dismissal without

---

[2] Per the notice of removal, Plaintiffs filed the initial Complaint on November 19, 2021 and then filed the present Amended Complaint on November 29, 2021. (ECF 1 at 2). Defendants were served on December 3, 2021. (Id.)

[3] Vineland Defendants noted that, as of the date of their notice of removal, no other Defendant had filed an answer or entered an appearance with respect to the New Jersey Superior Court matter. (ECF 1 at 3). The record does not indicate whether A.R. was served, see Brown v. Jevic, 575 F.3d 322, 327 (3d Cir. 2009) ("In the typical case, where all defendants must consent to removal, a defendant who has not been served need not consent to removal."), and the only other Defendants unaccounted for are John Doe 1 through 30, see Granovsky v. Pfizer, Inc., 631 F. Supp. 2d 554, 559 (D.N.J. July 7, 2009) (recognizing that the rule requiring unanimity among defendants prior removal "may be disregarded where . . . a non-joining defendant is an unknown or nominal party"). Notably, Plaintiffs have not challenged Vineland Defendants' removal. See 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).").

3

prejudice as to several of Plaintiffs' claims, including negligence based on vicarious liability for the actions of A.R. and John Doe 21 through 30; 42 U.S.C. § 1983 claims with respect to Gruccio, Demarchi, and Provenzano as individual Defendants; and H.V. and F.J.'s <u>per quod</u> claims, with the exception of medical expenses for A.T.V.'s treatment. (ECF 4 at 2-3).

Vineland Defendants moved to dismiss Plaintiffs' remaining claims, (ECF 5; ECF 5-2 at 5), consisting of alleged violations of 42 U.S.C.§ 1983 and Title IX as well as common-law negligence. Plaintiffs filed an opposition brief, (ECF 8), to which Vineland Defendants replied, (ECF 9).

**II. Discussion**

    **A. Jurisdiction**

The Court possesses original jurisdiction over Plaintiffs' claims stemming from 42 U.S.C.§ 1983 and Title IX. <u>See</u> 28 U.S.C. § 1331. It has supplemental jurisdiction over Plaintiffs' common-law negligence claim. <u>See</u> 28 U.S.C. § 1367(a).

    **B. Motion to Dismiss**

Pursuant to the Federal Rules of Civil Procedure, a party may assert by motion a failure to state a claim upon which relief can be granted. <u>See</u> Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must provide 'a short and plain statement of the claim showing that the pleader is

4

entitled to relief,'" Doe v. Princeton Univ., 30 F.4th 335, 341-42 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and – accepting the plaintiff's factual assertions, but not legal conclusions, as true – "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" id. at 342 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  The sufficiency of a complaint is determined by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Courts considering motions to dismiss are "bound not to 'go beyond the facts alleged in the Complaint and the documents on which the claims made therein [are] based.'"  Bruni v. City of Pittsburgh, 824 F.3d 353, 360 (3d Cir. 2016) (alteration in original) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1425 (3d Cir. 1997)).  Though a motion to dismiss necessarily "deprives a plaintiff of the benefit of the court's adjudication of the merits of its claim before the court considers any evidence," Sweda v. Univ. of Pa., 923 F.3d 320, 325 (3d Cir. 2019),"Rule 12(b)(6) is meant to allow those claims

that are facially plausible to proceed, while not permitting expensive discovery to commence for claims that are merely 'possible,'" Pickett v. Ocean-Monmouth Legal Servs., Inc., No. 11-6980, 2012 WL 254132, at *3 (D.N.J. Jan. 27, 2012) (citing Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009)).

**III. Analysis**

    **A. Plaintiffs' 42 U.S.C § 1983 Claim**

The Court will first analyze Plaintiffs' 42 U.S.C. § 1983 claim, representing Count 3 of the Amended Complaint. To succeed in a § 1983 claim, the plaintiff "must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the Constitution." Malleus, 641 F.3d at 563 (citing West v. Atkins, 487 U.S. 42, 48 (1988)). "Local governments, such as school districts, cannot be held liable under § 1983 for the acts of their employees. Instead, local governments may be found liable under § 1983 for 'their own illegal acts.'" Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 174-75 (3d Cir. 2017) (quoting Connick v. Thompson, 563 U.S. 51, 60 (2011)). A plaintiff must show that the government itself caused the constitutional violation through its policy or custom. Id. at 175.

Because the Due Process Clause of the Fourteenth Amendment "does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals," § 1983 actions

6

centering on the sexual assault of a student by a fellow student are evaluated under the state-created danger doctrine. See Brown v. Sch. Dist. of Phila., 456 Fed. Appx. 88, 90-91 (3d Cir. 2011) (quoting Sanford v. Stiles, 456 F.3d 298, 303-04 (3d Cir. 2006)); see also Lockhart v. Willingboro High Sch., 170 F. Supp. 3d 722, 731-32 (D.N.J. Mar. 31, 2015) (recognizing the state-created danger doctrine as an exception to the general rule that the Due Process Clause does not impose a duty to protect against harms caused by private actors).[4]  To assert a claim under the state-created danger doctrine, a plaintiff must prove: (1) that the harm was "foreseeable and fairly direct," (2) the "state actor acted with a degree of culpability that shocks the conscience," (3) the plaintiff was not merely a member of the general public, but rather a relationship existed between the state and the plaintiff that made the plaintiff a foreseeable victim or a member of a discrete class of individuals subjected

---

[4] A second exception to the general rule that there is no duty to protect against harm created by private actors is the "special relationship" exception, "which allows a plaintiff to recover when the state enters into a special relationship with a citizen and 'fails to protect the health and safety of the citizen to whom it owes an affirmative duty.'" Lockhart, 170 F. Supp. 3d at 731 (quoting D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1369 (3d Cir. 1992)). Such a relationship has not been found between schools and their students. Id. (citing Morrow v. Balaski, 719 F.3d 160, 170 (3d Cir. 2013)); Brown, 456 Fed. Appx. at 90 n.5 (recognizing the special or "custodial" relationship exception, but finding that "a student in school does not have that relationship with the state" (citing D.R., 972 F.2d at 1371)).

to the potential harm caused by the state's action, and (4) a state actor affirmatively used their authority in a way that created danger or made the plaintiff more vulnerable to danger than had the state actor not acted at all. Brown, 456 Fed. Appx. at 91 (citing Sanford, 456 F.3d at 304-05).

Here, Plaintiffs largely reiterate the Amended Complaint and assert that the Vineland Defendants were aware not of a threat of sexual assault specifically, but rather the danger caused by two students entering a school without any vetting. (ECF 8 at 14). School security was allegedly on notice of a dangerous condition by failing to vet and school officials were allegedly on actual notice of danger caused by the failure to follow vetting procedures. (Id. at 15). Discovery is necessary, according to Plaintiffs, to review policies and procedures, examine A.R.'s possible juvenile records, and determine whether similar incidents had taken place in the past. (Id. at 12-15). The Court holds that Plaintiffs fail to meet their burden in articulating facts sufficient to support a plausible § 1983 claim.

First, the Court cannot find that the harm of a sexual assault was foreseeable by a failure to vet and monitor students entering a school building. Cf. L.R. v. Sch. Dist. of Phila., 836 F.3d 235, 245 (3d Cir. 2016) (finding that common sense dictated that there was an inherent risk in releasing a

8

kindergartener to an adult stranger). As noted by the Plaintiffs, school was in session at the time A.R. and A.T.V., both of high school age, entered the building, logically decreasing suspicion. In Lockhart, a case in which the defendants were allegedly on notice of a previous sexual assault committed against the plaintiff, the court concluded that "no reasonable inference may be drawn that Defendants were aware of a high likelihood that allowing [the plaintiff] momentarily to enter a classroom unsupervised to retrieve her belongings would have led to her being sexually assaulted." 170 F. Supp. 3d at 732.

Second, the Court does not find that Vineland Defendants' behavior shocks the conscience. The Third Circuit has noted that the level of culpability required to shock the conscience depends on the context of the matter and that, when the actor is able to deliberate, deliberate indifference – "conscious disregard of a substantial risk of serious harm" – suffices. See L.R., 836 F.3d at 246 (quoting Vargas v. City of Phila., 783 F.3d 962, 973-74 (3d Cir. 2015)). Here, again, Plaintiffs fail to provide any facts that would lead to a reasonable inference that permitting students to enter and walk about the school building during school hours constituted a disregard of serious harm. See E.R. v. Lopatcong Twp. Middle Sch., No. 13-1550, 2015 WL 4619665, at *6 (D.N.J. July 31, 2015) (finding, in a case in

9

which a teacher was known to have transported students in her car, that "Moving Defendants' failure to act does not 'shock the conscience,' since there are no facts alleged that Moving Defendants had actual knowledge that Plaintiff was being abused"). Nor do Plaintiffs, thirdly, provide any facts with which to deduce that A.T.V. was a foreseeable victim or member of a discrete class. Cf. L.R., 836 F.3d at 247 (finding that a student "was a member of the discrete class of kindergarten children for whose benefit the School District's release policy had been instituted").

Finally, and most fatally, Plaintiffs fail to show an affirmative action that created a danger or made A.T.V. more vulnerable to danger. Importantly, "to satisfy the fourth element of the state created danger test, a plaintiff must 'allege an affirmative action rather than inaction or omission.'" L. H. v. Pittston Area Sch. Dist., 666 Fed. Appx. 213, 217 (3d Cir. 2016) (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 282 (3d Cir. 2006)). Here, Plaintiffs emphasize a failure to vet and monitor and to adhere to related policies. The Third Circuit has been clear in analogous cases that such alleged failures are insufficient. See id. (concluding that the school district and superintendent's alleged failure to train, supervise, and monitor a teacher did not satisfy the fourth element of the state-created danger test); Morrow, 719 F.3d at

10

178 (holding that suspending rather than expelling a student – potentially in violation of a disciplinary policy – did not constitute an affirmative act); Brown, 456 Fed. Appx. at 91 (finding that the district's promise – and later failure – to provide one-on-one supervision was not an affirmative act).

In their opposition, Plaintiffs rely on Dipippa v. Union School District, 819 F. Supp. 2d 435 (W.D. Pa. May 4, 2011), which survived the defendants' motion to dismiss.  (ECF 8 at 16-17).  The Court finds Dipippa to be distinguishable.  Not only did Dipippa involve sexual assault by a teacher, 819 F. Supp. 2d at 437-38, which the Court has found is subject to a distinct analysis as compared to an assault by a student, but the facts alleged are markedly different as compared to those present in the instant case.  In Dipippa, the plaintiffs' proffered facts included open and obvious physical contact between the student and teacher during school functions and communications between the student's mother and the school principal in which concerns about the student and teacher's relationship were discussed and the mother was advised that the school was investigating the matter.  Id. at 442.

Plaintiffs do not plead any facts remotely comparable and, in any case, rely on a distinct analysis the Court finds to be insufficient here.  Therefore, the Court will dismiss Plaintiffs' § 1983 claim without prejudice.

11

### B. Plaintiffs' Title IX Claim

The Court next must evaluate Plaintiffs' claim under Title IX, representing Count 4 of the Amended Complaint. Though the text of Title IX refers to funding, see 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."), school boards may be liable for sexual harassment committed by one student against another, see Lockhart, 170 F. Supp. 3d at 736 (citing Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 643 (1999)). To succeed in such a claim, a plaintiff must demonstrate (1) that the school board exercised substantial control over the harasser and the context in which the harassment occurred, (2) actual knowledge of the harassment, (3) deliberate indifference to the harassment, and (4) that the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victim[] of access to the educational opportunities or benefits provided by the school." Id. (first three alterations in original) (quoting Davis, 526 U.S. at 645, 650).

Plaintiffs, relying on the slightly different test applied to the acts of a teacher against a student in Dipippa, argue that the sexual assault was a hostile act and that Gruccio and

12

Demarchi were appropriate individuals to have had knowledge of the hostile environment. (ECF 8 at 9). Deliberate indifference, according to Plaintiffs, need not be established at this stage and must be sorted out in discovery and, if sufficient facts are not uncovered during discovery, Plaintiffs pledge to voluntary dismiss their Title IX claim. (Id. at 8-9). Plaintiffs contend that it is plausible to infer that: school security had a duty to vet those entering the building, security cameras were intended to monitor activity within the building, the assault would have been avoided had the computer lab's door been locked, video evidence will show a failure to vet and monitor students, and a failure to vet could pose a risk to those in the building. (Id. at 9-11 ("It is plausible to imagine a factual scenario in which a security guard utilizes his monitors to see the students enter the unlocked and empty classroom, without permission to do so and for reasons unknown, posing a danger to the victim.")).

The Court finds that, accepting the fact that a school superintendent and a school principal are appropriate individuals to have actual knowledge of harassment for Title IX purposes, Plaintiffs have failed to plead any facts indicating that Gruccio and Demarchi had knowledge of prior or ongoing harassment. Plaintiffs seem to attempt to circumvent this requirement by emphasizing Gruccio and Demarchi's positions and characterizing the "actual notice" of danger as A.R. and

13

A.T.V.'s unvetted entry and unmonitored travel through the school building rather than sexual harassment or assault. (ECF 8 at 9-12). The Court is persuaded by decisions within the Third Circuit that have focused on the awareness of prior harassment. See Doe ex rel. Doe v. N. Allegheny Sch. Dist., No. 2:08-cv-1383, 2011 WL 3667279, at *9 (W.D. Pa. Aug. 22, 2011) (granting summary judgment and finding that there was no evidence that the student reported a fellow student's requests for sexual acts prior to the sexual assault); Vaird v. Sch. Dist. of Phila., No. Civ. A. 99-2727, 2000 WL 576441, at *3 (E.D. Pa. May 12, 2000) (granting summary judgment and finding that a jury could not find that the district had actual knowledge of sexual harassment prior to the assault).

This interpretation of the knowledge requirement is supported by a plaintiff's burden in demonstrating deliberate indifference. The Third Circuit has found that "[t]he relevant inquiry for purposes of evaluating whether the School District . . . was deliberately indifferent to known circumstances of harassment is to review its response to reported incidents of harassment." Doe v. Bellefonte Area Sch. Dist., 106 Fed. Appx. 798, 800 (3d Cir. 2004) (finding suspensions, warnings, counseling, faculty notices, and assemblies to be "not clearly unreasonable"). Because the focus must be on Vineland Defendants' response to the relevant conduct, the Court holds

14

that the proper inquiry is the knowledge of an appropriate person of previous or ongoing harassment.

Plaintiffs again rely on Dipippa and accurately note that the "plaintiffs were not saddled with the burden to prove that those facts rose to the level of 'deliberate indifference' at that early stage of the litigation." (ECF 8 at 7). However, as described, Dipippa is a factually distinguishable case in which the plaintiffs pled that several school officials possessed actual notice that a teacher was having inappropriate interactions with a student and that those interactions continued after that notice. 819 F. Supp. 2d at 447. Similarly, in Lockhart, the plaintiff's Title IX claim against the board of education was permitted to proceed based on specific alleged facts including a psychological evaluation report drafted prior to the student's assault indicating that the student was sexually harassed by other students and particularly vulnerable to sexual assault. 170 F. Supp. 3d at 736-37.

Plaintiffs fail to plead any facts that would indicate that Vineland Defendants possessed any knowledge of prior harassment. The Court thus holds that dismissal is appropriate as to Plaintiffs' Title IX claim.

**C. Plaintiffs' Negligence Claim**

Finally, the Court will decline to exercise jurisdiction as

15

to Plaintiffs' negligence claim at this time after having dismissed Plaintiffs' federal claims.

Though a federal court possesses supplemental jurisdiction over claims that are so related to those for which there is original jurisdiction that they "form part of the same case or controversy," 28 U.S.C. § 1367(a), a court may decline to exercise supplement jurisdiction when it "has dismissed all claims over which it has original jurisdiction," § 1367(c)(3). Beyond discretion, a court "<u>must</u> decline" exercise of supplemental jurisdiction in cases in which all original jurisdiction claims have been dismissed "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Stone v. Martin</u>, 720 Fed. Appx. 132, 136 (3d Cir. 2017) (emphasis in original) (quoting <u>Hedges v. Musco</u>, 204 F.3d 109, 123 (3d Cir. 2000)). "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." <u>McCarthy v. Equinox Holdings, Inc.</u>, No. 14-37, 2015 WL 540218, at *4 (D.N.J. Feb. 9, 2015) (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966) and <u>Growth Horizons, Inc. v. Del. Cnty.</u>, 983 F.2d 1277, 1284-85 (3d Cir. 1993)).

In their notice of removal, Vineland Defendants asserted that jurisdiction could alternatively be based upon diversity of

16

citizenship as Plaintiffs are citizens of Florida and Vineland Defendants and A.R. are citizens of New Jersey. (ECF 1 at 3). However, diversity of citizenship is just one part of the equation. The amount in controversy must also exceed $75,000, see 28 U.S.C. § 1332(a), and the original removal petition is silent in that regard. The jurisdictional amount in controversy must be affirmatively pled. See Fed. R. Civ. P. 8(a)(1) (requiring that pleadings contain "a short and plain statement of the grounds for the court's jurisdiction"); ACE Am. Ins. Co. v. Guerriero, No.: 2:17-cv-00820, 2017 WL 3641905, at *3 (D.N.J. Aug. 24, 2017) ("The plaintiff must affirmatively plead the amount in controversy on the face of the complaint." (citing Gray v. Occidental Life Ins. Co. of Cal., 387 F.2d 935, 937 (3d Cir. 1968))).

The Court will therefore provide the Defendants, as the parties who first asserted the Court's jurisdiction through removal, fourteen days to demonstrate that at the time of the original removal petition it could reasonably be said that the amount in controversy satisfied the jurisdictional amount. See Russ v. Unum Life Ins. Co., 442 F. Supp. 2d 193, 199 (D.N.J. July 11, 2006) ("[I]t is the burden of the removing defendant to establish the requisite amount in controversy . . . ."). If Defendants fail to demonstrate that the jurisdictional amount is met through the filing of an amended removal petition, the Court

17

will remand Plaintiffs' remaining negligence claim to New Jersey Superior Court.  See Racioppe v. Verona Bd. of Educ., No. 18-13308, 2019 WL 4127365, at *5 (D.N.J. Aug. 29, 2019) ("If a district court decides it will not hear the remaining state law claims and the case has been removed from a state court, 'remand to that court is a viable alternative to a dismissal without prejudice.'" (quoting Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995))).

### D. Plaintiffs' Request to Amend

Plaintiffs, finally, "request an order permitting them to file an amended complaint to include additional facts" if the Court would be "so inclined."  (ECF 8 at 21).  Pursuant to the Federal Rules of Civil Procedure, a party may amend a pleading beyond the time constraints of Rule 15(a)(1) "only with the opposing party's written consent or the court's leave" and "court[s] should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  Our Local Civil Rules generally require that a party seeking leave to amend a pleading do so by motion and include both a copy of the proposed amended pleading and a form of the amended pleading indicating additions and deletions as compared to the prior pleading.  L. Civ. R. 15.1(a).  Plaintiffs' request within their opposition brief does not meet these requirements.

Even if the Court was to exercise its discretion and look

18

beyond strict adherence to procedural rules, see id., the Court finds that the proposed information to be added – A.R.'s guilty plea in juvenile criminal proceedings, the specific time of the assault, and the addition of "appropriate persons" descriptors for the individual Vineland Defendants, (ECF 8 at 20-21) – would not change the above analyses with respect to Plaintiffs' federal claims.  The only newly alleged fact that the Court finds to be substantive is Plaintiffs' allegation that a school security guard provided contradictory statements regarding the vetting of A.R. and A.T.V. – first claiming that he permitted both entry into the school because they were both involved in the Reserve Officers' Training Corps program and later claiming that A.T.V. told him that she was waiting for a ride home and that he believed that A.R. was accompanying her.  (Id. at 20). However, the Court finds that the proposed additional facts would logically undercut Plaintiffs' claims as Plaintiffs have alleged that the school failed to vet A.R. and A.T.V. upon their entry into the school building and the security guard's alleged contradictory answers would indicate that they were vetted.

"The decision of whether to permit a plaintiff to file an amended or supplemental complaint under Rule 15 is within a District Court's discretion and is guided by Rule 15's liberal standards." Garrett v. Wexford Health, 938 F.3d 69, 89 (3d Cir. 2019).  In exercising that discretion, a court may determine

that "amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  See Matthews v. N.J. Inst. of Tech., 717 F. Supp. 2d 447, 451 (D.N.J. June 15, 2010) (quoting Alvin v. Suzuki, 227 F.3d 107, 122 (3d Cir. 2000)).  Because the Court finds that the proposed additional facts would either undermine or have no bearing on Plaintiffs' federal claims for which the Court has original jurisdiction, it will not enter the requested order permitting leave to amend.

**IV. Conclusion**

For the reasons stated above, Vineland Defendants' motion to dismiss, (ECF 5), will be granted in part.  The Defendants will have fourteen days to file an amended removal petition asserting that at the time of the original removal petition the amount in controversy exceeded $75,000.

An Order consistent with this Opinion will be entered.


Date: November 22, 2022            s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.